

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ROBERT L. ROSE,<br><br>Petitioner,<br><br>vs.<br><br>LEROY KIRKEGARD; ATTORNEY GENERAL OF THE STATE OF MONTANA,<br><br>Respondents. | CV 13–156–M–DWM–JCL<br><br>ORDER |

This matter comes before this Court on Petitioner Robert L. Rose's writ of habeas corpus under 28 U.S.C. § 2254. United States Magistrate Judge Lynch entered findings and recommendations on January 6, 2015, recommending all of Rose's claims be denied for lack of merit except Claim 2, alleging violation of the right to the effective assistance of counsel in plea negotiations in late May 2003, and Claim 6, alleging violation of Rose's right to a speedy trial. (Doc. 27.) The Court agrees.

1

The Court reviews findings and recommendations not specifically objected to for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 623 (1993) (internal quotation marks omitted). Following two extensions of time, Rose filed his objections on March 30, 2015. (Doc. 41.) The findings and recommendation to which Rose specifically objects are reviewed de novo. 28 U.S.C. § 636(b)(1). Because the parties are familiar with the factual and procedural background of this case, it is presented only in the context of the Court's analysis.

## I.

Rose has limited his objections to Judge Lynch's findings and recommendations as to Claims 1, 2, 3, 5, 10, and 12; these objections are discussed below. The Court finds no clear error with Judge Lynch's analysis and conclusions as to Rose's remaining claims, which are denied for lack of merit.

### A. Claim 1: Overnight Recess

Rose's objections regarding the overnight recess relate to the perceived inability to pursue further factual development at the state court. These objections

do nothing to controvert Judge Lynch's conclusion that "[t]here is simply no reason to think that Rose could, by adducing additional facts, prove the *Strickland* claim he alleges." (Doc. 27 at 17.) Rose has failed to show the facts of this case rise to the level of constructive denial of counsel by the government at a critical stage. *See United States v. Cronic*, 466 U.S. 648, 658-59 (1984) (holding that "trial is unfair if the accused is denied counsel at a critical stage of his trial"). In *Geders v. United States*, 425 U.S. 80 (1976), the Supreme Court held that the trial court's order preventing the defendant from consulting his counsel about anything during the 17-hour overnight recess in the trial between his direct and cross-examination deprived him of his right to effective assistance of counsel. In *Perry v. Leeke*, 488 U.S. 272 (1989), the Supreme Court held the same right was not violated by a state trial court's order directing the petitioner not to consult his attorney during a 15-minute afternoon recess. Rose insists that the situation here is more like *Geders* and distinguishable from *Leeke*. Unlike both situations, however, the Court did not order Rose to be sequestered and neither the Court nor the prosecutor acted to prevent Rose from meeting with Sather; the two did, in fact, meet. (*See* Trial Tr., Doc. 8-39 at 307:23-25.) Further, Rose exhibited no concern at the time regarding his inability to meet at length with counsel over the recess, but instead focused on his desire for self-representation. (Doc. 8-22 at 2:3-

3

4:11.) Rose's Claim 1 is denied for lack of merit.

### B. Claim 2: Plea Offer

Rose's objection as it relates to Claim 2, which is one of the claims Judge Lynch recommends for further proceedings, is limited to footnote 6, where Judge Lynch provides analysis as to why the offered plea was illegal in its form. (*See* Doc. 27 at 33 n. 6). Rose states that "[w]ithout this rectification, [he] believes Ms. Sather's IAC during plea negotiations might escape proper weight during upcoming proceedings in this case." (Doc. 41 at 2.) Rose insists that the terms of the agreement which Sather believed to be illegal, were not. (*Id.* at 21.) At the time the plea offer was made in 2003, it was unclear whether a persistent felony offender ("PFO") sentence could be imposed in addition to those imposed for the actual offenses of conviction. *See State v. Robinson*, 177 P.3d 488, 495 (Mont. 2008) (holding that where a PFO sentence is imposed in addition to the sentence for the offense itself, if "the sentences imposed, in total, are well below the maximum provided for by [Mont. Code Ann.] § 46-18-502(2)" the sentence is not illegal "because, in total, they are within statutory parameters") *overruled by State v. Gunderson (Gunderson II)*, 237 P.3d 74, 83 (Mont. 2010) (holding "that sentences imposed based on an offender's status as a persistent felony offender *replace* the sentence for the underlying felony"). As there was no definitive state

4

law on the issue in 2003, it is possible that Corn's alleged offer may have been legal at the time and may have been accepted by the trial court. Judge Lynch correctly determined Claim 2 should move forward for further proceedings. (*See* Doc. 27 at 34 ("[I]t is not clear whether Sather performed in a professionally unreasonable manner or whether Rose suffered prejudice as a result.").) Footnote 6, which merely explains the sentencing structure present in the plea agreement, does not affect that determination. Rose's objection is overruled.

C. **Claim 3: Presence at Plea Negotiations**

In *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012), the Supreme Court applied the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), to plea negotiations, holding "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."[1] Rose presents no cases, and this Court is not aware of any, that specifically require the defendant to be physically present during this process. *Strickland* concerns in the plea bargaining process regard defense counsel's failure to communicate with his client and a

---

[1] Even though *Frye* post-dates the state court adjudication in this case, it may be properly considered as illustrative of the proper application of *Strickland*. *See Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (holding that courts can look to cases that post-dates the state adjudication as long as the cited case does not create new law, but rather is "squarely governed" by existing Supreme Court precedent).

5

showing by "reasonable probability that the end result of the criminal process would have bee more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Frye*, 132 S. Ct. 1408-09. These concerns are addressed in Rose's Claim 2, which is to proceed. Rose's Claim 3 is denied for lack of merit.

### D. Claim 5: Waiver of Counsel

Rose maintains that "his Sixth Amendment right to counsel was violated/deprived during trial when the Judge impermissibly allowed waiver of counsel." (Objs., Doc. 41 at 23.) Rose argues that the trial court erred in permitting him to represent himself because: (1) the wavier was not timely, (2) the trial judge failed to ensure he was aware of the "three elements" of self-representation, and (3) the waiver was not equivocal. Under the standards outlined by the Supreme Court, Rose "knowingly and intelligently" waived his right to assistance of counsel.

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits." *Faretta v. Cal.*, 422 U.S. 806, 835 (1975) (internal quotation marks omitted). The defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will

6

establish that he knows what he is doing and his choice is made with eyes open." *Id.* (internal quotation marks omitted). Such is the case here.

Here, following an extensive conversation regarding Rose's understanding of the case, Rose informed the trial judge that he wanted to represent himself. The record affirmatively shows that Rose was literate, competent, and understanding, and that he was voluntarily exercising his informed free will. The trial judge had Rose file a waiver of counsel and asked,"you're doing this freely and voluntarily, after having given it sufficient thought?" (Trial Tr., Doc. 8-39 at 314:5-7.) Rose answered in the affirmative. (*Id.* at 314:8.) During that colloquy, the judge also emphasized the seriousness of the charge, stating "you understand there's an awful lot more at stake here than there is on a criminal trespass charge?"[2] (*Id.* at 289:3-5.) Rose once again answered in the affirmative. (*Id.* at 289:6.) Rose knowingly and intelligently waived his right to counsel. "It is the defendant [] who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Faretta*, 422 U.S. at 834 (quoting *Ill. v. Allen*, 397 U.S.

---

[2] This was in reference to a case in Justice Court in which Rose represented himself and was acquitted.

337, 350-51 (1970) (Brennan, J., concurring)).

The only other possible waiver issue implicated by the facts of this case is Rose's competency to waive counsel and proceed to trial. In *Indiana v. Edwards*, 554 U.S. 164, 177-78 (2008), the Supreme Court held that "the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves."[3] The fact Rose underwent a psychological evaluation and intended to proceed on a mental defect defense does not show that Rose lacked the mental capacity to conduct his trial defense unless represented. In fact, his extensive knowledge of the proceedings and what was expected of him during trial, as discussed above, conveys the very opposite. The trial court here reasonably concluded that Rose was aware of the serious nature of the proceedings and was able to proceed at trial without the assistance of counsel. Even if Rose's mental state was sufficiently in question to raise an *Edwards* concern—which it was not—the Supreme Court has merely held that states may impose counsel in such circumstances, not that the failure to do so is of-and-in-itself a constitutional violation. *Edwards*, 554 U.S. at

---

[3] *Dusky v. United States*, 362 U.S. 402 (1960) (establishing the standard for competency to stand trial).

178 (expressly refusing to overrule *Faretta*). Rose's Claim 5 lacks merit.

E. **Claim 10: Judicial Bias**

Rose insists that his constitutional rights were violated because the trial judge, Judge Langton, was biased and Rose was not afforded a fair hearing. "[T]he floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997) (internal quotation marks and citations omitted). As noted by Judge Lynch, the Supreme Court has been careful to distinguish "extreme facts" under which judicial bias may be found from those "that would not rise to a constitutional level." *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 887 (2009). Rose has not presented facts or information indicating Judge Langton's conduct rose to the extreme level required for finding a constitutional violation based on judicial bias. Rose's claim is without merit.

F. **Claim 12: Ineffective Assistance of Appellate Counsel**

Claims of ineffective assistance of appellate counsel are reviewed according to the same *Strickland* standard as those governing claims of ineffective assistance of trial counsel. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000). Rose maintains that appellate counsel, Chad Wright, was ineffective for failing present sufficient

facts on the speedy trial issue, especially in light of the change in Montana's speedy trial analysis. *See State v. Ariegwe*, 167 P.3d 815 (Mont. 2007) (clarifying and modifying Montana's speedy trial analysis). However, there is no indication Wright performed unreasonably either at the evidentiary hearing or on appeal. Rose's claim that Wright was ineffective in connection with his speedy trial claim is denied for lack of merit. To the extent Rose has concerns regarding whether his right to a speedy trial was in fact violated, Judge Lynch has recommended further proceedings on that issue.

## II.

Accordingly, IT IS ORDERED that the Findings and Recommendation (Doc. 27) is ADOPTED IN FULL. All of Rose's claims are DENIED for lack of merit, except Claim 2, alleging violation of the right to the effective assistance of counsel in plea negotiations in late May 2003, and Claim 6, alleging violations of Rose's right to a speedy trial, which are subject to further proceedings.

Dated this 21st day of April, 2015.

Donald W. Molloy, District Judge
United States District Court